UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | Criminal No. **3:08-CR-153-L** |
| | § | |
| **MICHEAL LEWIS ANDREWS (9)** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Micheal Lewis Andrews's Motion for Reconsideration of Ruling on Andrews's Rule 29 Motion, filed July 21, 2010. After carefully considering the motion, response, record, and applicable law, the court **denies** Defendant Micheal Lewis Andrews's Motion for Reconsideration of Ruling on Andrews's Rule 29 Motion.

**I.     Background**

The grand jury returned a superseding indictment in this case on January 20, 2010 (the "Indictment"). Defendant Micheal Lewis Andrews ("Andrews" or "Defendant") was indicted on three counts: count one, conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; and counts sixteen and seventeen, wire fraud and aiding and abetting, in violation of 18 U.S.C. §§ 1343 and 2.

After two and a half days of jury selection, the trial of this action began on February 18, 2010, and continued until March 31, 2010. On March 23, 2010, after the government rested, Andrews made an oral motion pursuant to Rule 29 of the Federal Rules of Criminal Procedure for judgment of acquittal. The court took the motion under advisement. On April 5, 2010, the jury returned with its verdict. The jury found Andrews guilty on counts sixteen and seventeen and not guilty on count

one. Defendant did not subsequently file a written motion for acquittal, but the court ordered the government to respond in writing to his oral motion.

The court denied Defendant's motion for acquittal on July 16, 2010. He subsequently moved for reconsideration of that order. The court now considers his motion for reconsideration and the government's response in light of the record and applicable law.

## II.     Analysis

Andrews was convicted of counts relating to the property located at 7012 Creek Bend Road ("Creek Bend"), Dallas, Texas. As set forth in the court's July 16, 2010 memorandum opinion and order, Andrews recruited Earl Young ("Young"), his pastor, to buy the property. Farrington met with Young thereafter. Farrington asked Uril Greene ("Greene"), the seller, to raise the sales price to cover renovations on the property, though none was done. Andrews requested an appraisal on the property, using the EFC Capital Mortgage fax. That document stated "value needed $325,000." The government's expert, Jim Pearson ("Pearson"), testified that the appraisal overvalued the property by $29,000. The loan application was prepared by Farrington or Andrews; Andrews submitted it to the lenders. Andrews was the broker. The loan application included false statements that Young had a higher income than he actually did, that he intended to occupy the property, and that he was renting out his primary residence. Andrews wrote a letter to the lender to bolster the false income on the loan application.

Defendant moves for reconsideration of the court's denial of his Rule 29 motion for acquittal. He contends that there was not sufficient evidence to convict him on counts sixteen and seventeen. Andrews argues that there was not sufficient evidence to support any act set forth as part of the

scheme to defraud in the Indictment. He also points to the testimony of Cora Manuel ("Manuel"), Young, Greene, and Anna Powell ("Powell") in support of his motion.

Manuel was the seller of the property located at 1509 Appalachian Drive ("Appalachian"), Allen, Texas. Andrews points to her testimony that Farrington contacted her about her property and met with her. She also testified that she reached an agreement to sell her home with Farrington, and that she expected to get between $25,000 and $30,000 at closing. Manuel stated that she met with Andrews and Farrington at a Starbucks and that she was upset because she only received $5,000 at closing. She testified that she discussed the disbursement in the car with Farrington. According to Andrews, Manuel never testified that he picked up rents. She lived in the property for a year and a half after closing, and no foreclosure took place. She testified that she had a conference call with Andrews and Young, that Andrews was upset with Farrington, and that she did not know that Andrews was the mortgage broker for the loan.

Andrews also points to statements made by Young during his testimony. According to Defendant, Young testified that it was a mutual effort with Andrews to begin investing with Farrington, that he met with both, that he had an oral contract with Farrington, that he gave Andrews information over the phone about his income and told him that he never intended to occupy the residence, and that he was not concerned about the selling price of the home because he trusted Andrews. Young testified that Farrington gave him money to buy cashiers' checks and that Farrington was the individual who guaranteed him that he would find a tenant. Young stated that Farrington gave him money to make payments for several months and that he did not think any business deal he did with Andrews was illegal. He told the special agent that he did not recall the income amount he told Farrington and Andrews and that they told him to use both his and his wife's

income. Andrews sets forth information about Young's income, including a mortgage allowance, gas allowance, vacations, love offering, anniversary bonus, his wife's income, and his base salary. Young stated that Andrews never told him he needed a residential lease on his residence to qualify for the loan and that the agreement was between him and Farrington. Andrews also notes that the loan was a "no doc loan," that Young had a credit score over 800, and that Young testified that no one told him he needed to purchase the home as owner occupied. Finally, Young testified that he bought a new home in his wife's name after these loans and that he was able to pay that mortgage payment and another mortgage. He stated that he chose to let the properties go into foreclosure.

Andrews also points to the testimony of Greene and Powell. Greene testified that he had never met Andrews and that it was Farrington and another individual who came to his home and negotiated a sales price. Andrews points to Powell's testimony that he lived in one of the properties on Winterwood Lane.

In response, the government argues that there is sufficient evidence to support the jury's verdict and that Defendant's motion should be denied. It notes that Defendant was also charged as an aider and abettor, in violation of 18 U.S.C. § 2, and therefore the jury did not need proof that he personally did every act constituting the counts of conviction.

With respect to Andrews's actions, the government points to his role in obtaining an appraisal for Creek Bend and notes that he directed that the appraisal value needed to be $325,000. It also points out that Andrews recruited Young as an investor and that he was present at a meeting between Young and Farrington. The government points out that, although Andrews made statements to Young that Farrington found tenants, collected rent, and managed properties, the jury could have believed that these statements were knowingly false because Andrews lived at two properties located

on Winterwood Lane, at least one of them without paying rent. The government further points to the false loan documents submitted by Andrews, even though Young testified that he gave Defendant accurate information. With respect to the lease on Young's residence, the government notes that the tenant was Craig Fleming and that Young met Fleming through Andrews. There was no evidence that Farrington knew Fleming; Andrews wrote the lender that Young and Flemings made corrections to the lease. Finally, the government notes that Andrews was present when an agreement was made relating to Appalachian. It also points out that Manuel, the seller of Appalachian, complained to Farrington about the agreement in Andrews's presence. Finally, the government notes that Andrews was paid excess loan proceeds as broker's fees.

The court must determine whether there was sufficient evidence to support Defendant's conviction on counts sixteen and seventeen. In making that determination, it must consider "whether a rational juror could have found the elements of the offense proved beyond a reasonable doubt. In so doing, we view the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in support of the jury verdict." *United States v. Valles*, 484 F.3d 745, 752 (5th Cir.), *cert. denied*, 551 U.S. 1155 (2007) (footnotes and citation omitted). In this case, a reasonable juror could have found that Andrews committed the elements of counts sixteen and seventeen, which relate to the Creek Bend transaction. Andrews was not convicted on any counts relating to conspiracy or the Appalachian property; the testimony of Manuel is therefore not relevant to the court's determination. Powell's testimony that Andrews lived in one of the residences on Winterwood is also not relevant. Even if the jury credited all of the testimony of Young, a reasonable juror could have found that Andrews was involved in the counts of conviction because he obtained the $325,000 appraisal, knew about the bogus lease on Young's residence, and submitted

loan applications with false information.  Finally, Greene's testimony that he never met Andrews does not demonstrate that Defendant should be acquitted because the jury could have believed testimony about his role in obtaining an appraisal on Creek Bend, recruiting Young, and submitting the loan application that included false information.

The court has carefully considered the parties' arguments in light of the applicable legal standard.  It determines that under the Rule 29 standard, there was sufficient evidence to support the jury's verdict on counts sixteen and seventeen.  The evidence supports a finding that Andrews, at a minimum, aided and abetted in wire fraud relating to the Creek Bend transaction, and the court will not reconsider its July 16, 2010 memorandum opinion and order.

### III. Conclusion

For the reasons stated herein, the court **denies** Defendant Micheal Lewis Andrews's Motion for Reconsideration of Ruling on Andrews's Rule 29 Motion.

**It is so ordered** this 16th day of September, 2010.

                                                    Sam A. Lindsay
                                                  United States District Judge